[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13820

Non-Argument Calendar

_____

In Re: NILHAN DEVELOPERS, LLC,

                                                                Debtor.

_____

NORCROSS HOSPITALITY, LLC,

                                                    Plaintiff-Appellant,

*versus*

LEON JONES,
Chapter 11 Trustee,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-03491-RWS

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

This appeal concerns the treatment of a post-petition loan provided by Norcross Hospitality, LLC, to Nilhan Developers, LLC, during Nilhan's Chapter 11 bankruptcy proceeding. Norcross and Nilhan were both managed by Chuck Thakkar. Without notifying the bankruptcy court, Thakkar arranged the loan so that Nilhan could exercise a repurchase option on property it hoped to develop. The bankruptcy court ruled that the loan entitled Norcross to a claim on Nilhan's estate, but one subordinated to the claims of all other creditors. On appeal, Norcross challenges the subordination of its claim on multiple grounds. After careful review, we affirm.

## I.    BACKGROUND

Nilhan Developers, LLC, is one of several corporate entities managed by Chuck Thakkar and owned by the Thakkar family. In May 2015, Nilhan and several Thakkar-affiliated entities each filed a petition for relief under Chapter 11 of the Bankruptcy Code, and the bankruptcy court consolidated their cases. Two years into the

proceeding, Nilhan, in need of funds, sought authorization to sell property it owned in Cobb County, Georgia known as Emerson Center. The bankruptcy court approved the sale of Nilhan's property to Westplan Investors Acquisitions, LLC, for $7.2 million. The proceeds from the sale went to a Nilhan creditor to satisfy obligations owed by Nilhan and the Thakkars. Under the sale agreement, Nilhan retained the option to repurchase some or all of the property at a later date. The sale closed on May 1, 2017. Westplan assigned its interest in the property to Accent Cumberland Apartments, LP. Accent notified Nilhan that it had until August 20, 2018, to exercise the repurchase option on the property—for a price $9.2 million.

As of July 30, 2018, Nilhan had less than $25,000 cash available. Thakkar, as Nilhan's manager, sought post-petition financing that would allow Nilhan to exercise the repurchase option—but did so without notifying counsel or the bankruptcy court. After several unsuccessful attempts, he succeeded in obtaining a loan from Rass Associates, LLC, for $4.1 million. That note was executed on August 18, 2020—two days before the repurchase deadline. Still short on funding, Thakkar turned to Norcross Hospitality, a company that he managed and that his children owned. He arranged for Norcross to borrow $4.5 million from Metro City Bank and then loan that money plus an additional $600,000 to Nilhan. Nilhan then executed a promissory note to Norcross for just under $5.2 million. That note was also executed on August 18, 2020. The Norcross note set interest at twelve percent with a maturity date just

four months later on December 18, 2018. Thakkar later testified that the Norcross loan was a risk because the property would have little value if Nilhan failed to secure certain zoning modifications needed before the property could be developed.

On the same day that it executed the loan agreements with Rass and Norcross, Nilhan used the borrowed funds to repurchase Emerson Center. Nilhan executed a deed on the property securing its debt to Rass that was recorded in Cobb County, Georgia. It also executed a deed to secure its debt to Norcross, but the deed was never recorded.

Less than two months later, the bankruptcy court learned that Nilhan had obtained financing and repurchased the property while reviewing Westplan's motion to dismiss a complaint Nilhan had filed against it in an adversary proceeding. The bankruptcy court then ordered Nilhan to appear and explain the circumstances surrounding the repurchase. In response, Nilhan asserted that re-zoning and development needed to occur for the property to have value, and that this was unlikely to occur with Nilhan in bankruptcy. Accordingly, it proposed that the property be transferred out of the estate to Norcross. Alternatively, it asked the bankruptcy court to retroactively approve its post-petition loan from Norcross *nunc pro tunc*.

The bankruptcy court did not immediately decide Nilhan's motion. Instead, it appointed a Chapter 11 Trustee to manage Nilhan's estate. The Trustee later sold Emerson Center to Rass for just under $12.8 million, resulting in net proceeds of approximately

$8.45 million. The bankruptcy court allowed Rass to bring an administrative expense claim for $404,260—the amount of interest that, by that time, had accrued on Rass's $4.1 million loan to Nilhan.

Norcross then filed a motion requesting an administrative expense claim for the $5.2 million that it contributed to the repurchase, or, in the alternative, *nunc pro tunc* approval of its post-petition loan to Nilhan. The Trustee opposed the motion. The Chapter 7 Trustee for Nilhan Financial, LLC—a pre-petition creditor of Nilhan's and another Thakkar-affiliated entity—also opposed the motion. After a hearing, the bankruptcy court denied Norcross's motion and subordinated Norcross's claim to the claims of all other Nilhan creditors, including Nilhan Financial. Because of its common ownership and management, the court considered Norcoss an insider of Nilhan, meaning that its transactions with Nilhan warranted heightened scrutiny. It noted that Norcross and Nilhan executed their post-petition loan agreement without the bankruptcy court's approval and that allowing Norcross's claim, either as an administrative claim or general unsecured claim, would harm Nilhan's other creditors, while subordinating its claim would allow Nilhan's other creditors to be paid in full. Norcross appealed the subordination of its claim to the United States District Court for the Northern District of Georgia. The district court affirmed. Norcross then filed a secondary appeal with this Court.

## II.    STANDARDS OF REVIEW

When reviewing a district court's appellate review of a bankruptcy court's decision, we apply the same standards of review as the district court. *See Reynolds v. Servisfirst Bank* (*In re Stanford*), 17 F.4th 116, 121 (11th Cir. 2021) (citing *United Mine Workers of Am. Combined Benefit Fund v. Toffel* (*In re Walter Energy, Inc.*), 911 F.3d 1121, 1135 (11th Cir. 2018)). Accordingly, we review conclusions of law drawn by both the district court and the bankruptcy court *de novo*. We review factual findings for clear error. *See id.*

We review a bankruptcy court's decision on whether to allow a claim for an abuse of discretion. *See Carnegia v. Georgia Higher Educ. Assistance Corp.*, 691 F.2d 482, 483 (11th Cir. 1982). Other "[e]quitable determinations by the Bankruptcy Court are [also] subject to review under an abuse of discretion standard." *Bakst v. Wetzel* (*In re Kingsley*), 518 F.3d 874, 877 (11th Cir. 2008) (quoting *Sipes v. Atl. Gulf Cmtys. Corp.* (*In re General Dev. Corp.*), 84 F.3d 1364, 1367 (11th Cir.1996)).

## III.    DISCUSSION

Norcross raises three main issues on appeal. First, it argues that the bankruptcy court erred in denying its administrative expense claim, both on the grounds that it lacked standing to bring the claim on a "substantial contribution" theory, and that its loan was not allowable as an administrative expense claim under 11 U.S.C. § 503(b)(1). Second, it argues that the bankruptcy court erred when it denied Norcross's motion for *nunc pro tunc* approval

of its post-petition loan to Nilhan. Third, it argues that the bankruptcy court erred when it denied Norcross's alternative request for an unsecured claim to be paid *pari passu* with other creditors. We address each issue in turn.

### A.     *The Bankruptcy Court Did Not Err in Disallowing an Administrative Expense Claim*

The bankruptcy court ruled that Norcross was not entitled to an administrative expense claim. On appeal, Norcross argues that the bankruptcy court erred in concluding that (1) it lacked standing to seek an administration expense claim based on a "substantial contribution" theory; and that (2) it failed to satisfy other statutory prerequisites for allowing its loan as an administrative expense claim. We address each issue in turn.

### 1.     Norcross Lacks Standing to Bring a "Substantial Contribution" Claim

Section 503(a) allows an entity to file an administrative expense claim for certain fees and expenses incurred on behalf of the estate. Section 503(b) lists the types of administrative expense claims that "shall be allowed." One such type includes "actual [and] necessary expenses" incurred by entities acting on behalf of the estate. 11 U.S.C. § 503(b)(3). That section is further subdivided into a list of the entities who may pursue such claims. Relevant here, Section 503(b)(3)(D) provides that when "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders" incurs actual and necessary expenses in making a "substantial contribution" to the debtor's

estate, "under chapter 9 or 11 of this title," they are entitled to an administrative expense claim. 11 U.S.C. § 503(b)(3)(D).

The bankruptcy court ruled that Norcross lacked standing to bring a "substantial contribution" claim because it was not one of the entities specifically contemplated by Section 503(b)(3)(D). On appeal, Norcross does not argue that it is one of the entities contemplated by Section 503(b)(3)(D). Instead, it argues that the bankruptcy court erred by reading the list of entities that may pursue "substantial contribution" claims as exhaustive when it should have read it as merely illustrative. It argues that the general language of Section 503(b)—that "there shall be allowed administrative expenses . . . including"—modifies the specific language used in Section 503(b)(3)(D) specifying which entities may pursue such claims on a "substantial contribution" theory.

We disagree with Norcross. Norcross is correct that Section 503(b) provides a non-exclusive list of the types of expenses that may be claimed as administrative expenses. *See Varsity Carpet Servs., Inc. v. Richardson* (*In re Colortex Indus., Inc.*), 19 F.3d 1371, 1377 (11th Cir. 1994) (explaining that "the use of the word 'including' [in Section 503(b)] is not intended to be limiting"). But subsection 503(b)(3)(D) identifies a specific subset of administrative expense claims—those seeking reimbursement for a "substantial contribution" to the estate—and specifically identifies the types of entities that may pursue such claims: creditors, indentured trustees, equity security holders, and committees of creditors or equity holders. Because the Code's plain text limits the kind of entities who

may pursue substantial contribution claims, the specific language of Section 503(b)(3)(D) controls despite the open-ended language of Section 503(b). *See In re Engler*, 500 B.R. 163, 174 (Bankr. M.D. Fla. 2013) ("[W]hen a subsection directly addresses the type of administrative expense sought, the restrictions in it cannot be avoided by appealing to the non-exclusive nature of § 503(b)." (quoting *In re Elder*, 321 B.R. 820, 829 (Bankr. E.D. Va. 2005)); *In re First Baldwin Bancshares, Inc.*, 2013 WL 2383660 (Bankr. S.D. Ala. 2013) ("Whereas, non-substantial contribution administrative claims may possibly be filed by noncreditors under § 503(a), the statute is very specific about the type of entity that may file substantial contribution claims under § 503(b)(3)(D)."). *See also Nat'l Cable & Telecomm. Ass'n, Inc. v. Gulf Power Co.*, 534 U.S. 327, 336 (2002) ("[S]pecific statutory language should control more general language when there is a conflict between the two."). Thus, the bankruptcy court did not err in concluding that Norcross lacked standing to pursue a substantial contribution claim.

> 2.    The Norcross Loan was Not Obtained in the Ordinary Course of Nilhan's Business

Section 503(b)(1) allows administrative expense claims for "actual, necessary costs and expenses of preserving the estate." The ability of a creditor to convert post-petition financing into a Section 503(b)(1) administrative expense claim is governed by 11 U.S.C. § 364. Under Section 364, this may occur in one of two ways. First, a claim is allowed for debt incurred "in the ordinary course of business." 11 U.S.C. § 364(a). Second, a claim is allowed for debt

incurred outside the ordinary course of business, provided there has been notice, a hearing, and bankruptcy court approval. *Id.* § 364(b).

Because Norcross's post-petition loan to Nilhan was arranged without court approval, Norcross may seek reimbursement for the loan as an administrative expense only if Nilhan obtained it within "the ordinary course of [its] business." As the party claiming entitlement to an administrative expense claim, Norcross bears the burden of proving that it is entitled to administrative priority. *See In re Concrete Prods., Inc.*, 208 B.R. 1000, 1006 (Bankr. S.D. Ga. 1996). Claims to administrative expense priority are subject to close scrutiny, and that scrutiny is heightened when the claimant is an insider of the debtor. *Id.* (citing *Pepper v. Litton*, 308 U.S. 295, 308 (1939)). Norcross does not contest its status as an insider of Nilhan.

The bankruptcy court reasonably concluded that Norcross failed to establish that its loan was within Nilhan's ordinary course of business. With the repurchase deadline looming, and after several unsuccessful attempts at obtaining third-party post-petition financing, Thakkar arranged a multi-million-dollar loan from another company he managed, Norcross. Norcross itself had to borrow money to fund the loan. And both Nilhan and Thakkar conceded that, at the time, it was unclear whether the transaction would benefit the estate because the property had not yet been zoned for development. Moreover, no record evidence suggests that what occurred here—a multi-million-dollar loan between two companies managed by the same individual, to exercise a

repurchase option on potentially worthless property, after failing to obtain third-party financing and with a contractual deadline looming—is ordinary industry practice. The bankruptcy court reasonably weighed the facts before it, concluding that the transaction fell outside the ordinary course of Nilhan's business.

B.     *The Bankruptcy Court did not Abuse its Discretion in Denying Nunc Pro Tunc Approval of the Loan*

The bankruptcy court denied Norcross's request for *nunc pro tunc* approval of its loan to Nilhan. Norcross argues that the bankruptcy court erred by declining to approve its unauthorized, post-petition loan to Nilhan. We disagree.

Where a debtor incurs post-petition debt without first obtaining bankruptcy court authorization, the court may exercise its equitable discretion to approve the loan *nunc pro tunc. See Sherman v. Harbin* (*In re Harbin*), 486 F.3d 510, 521 (9th Cir. 2007); *see also* 11 U.S.C. § 105(a) (granting bankruptcy courts the equitable power to issue any order "that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]"). Such approval is warranted if: (1) the bankruptcy court would have authorized the transaction had a timely request been made; (2) the bankruptcy court was reasonably persuaded that other creditors were not harmed; and (3) the debtor honestly believed that it had authority to enter into the transaction. *See In re Am. Cooler Co.*, 125 F.2d 496, 496 (2d Cir. 1942); *see also In re Harbin*, 486 F.3d at 523.

Here, the bankruptcy court reasonably determined that Norcross's loan to Nilhan failed to satisfy those criteria. First, the bankruptcy court explained that, had it been asked, it would not have approved the loan due to the large amount borrowed, the twelve percent interest rate, and the fact that the loan matured just four months after the note was executed. Second, the court noted that, though Nilhan's creditors eventually benefited from the Trustee's sale of Emerson Center, Nilhan itself did not believe that the property had much value without the zoning modifications and had proposed transferring the property out of the estate to Norcross. Finally, the bankruptcy court found that neither Norcross nor Nilhan could have reasonably believed, more than three years into the bankruptcy proceeding, that they had authority to execute the note without court approval. Accordingly, the bankruptcy court did not abuse its discretion in denying Norcross's request for *nunc pro tunc* approval.

C.     *The Bankruptcy Court did not Abuse its Discretion in Subordinating Norcross's Claim*

The bankruptcy court denied Norcross's request to be paid pari passu with an insider and pre-petition creditor of Nilhan's—Nilhan Financial. Norcross argues that it was similarly situated to Nilhan Financial and provided a greater benefit to the estate, such that the bankruptcy court erred by failing to treat the two entities similarly. We disagree.

Under Section 510(c)(1), the bankruptcy court has equitable power to "subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim." 11 U.S.C. § 510(c)(1); see Estes v. N & D Props., Inc. (In re N & D Props., Inc.), 799 F.2d 726, 731 (11th Cir. 1986). To determine whether equitable subordination is appropriate, courts assess whether (1) the claimant "engaged in some type of inequitable conduct" and (2) the misconduct "result[ed] in injury to the creditors of the bankruptcy or conferred an unfair advantage on the claimant." Durango Ga. Paper Co. v. Pension Benefit Guar. Corp. (In re Durango Ga. Paper Co.), 539 B.R. 896, 901 (Bankr. S.D. Ga. 2015). Notably, "[t]he standard of misconduct is lower for an insider claimant than a non-insider claimant." Id. at 903 ("Equitable subordination of an insider's claim requires conduct that is only 'unfair.'") (quoting In re N & D Props., Inc., 799 F.2d at 731)).

The bankruptcy court did not abuse its discretion by subordinating Norcross's claim.

First, the bankruptcy court distinguished Nilhan Financial's position from Norcross's by noting that Nilhan Financial was administered by a Chapter 7 Trustee, who, though a successor in interest, did not necessarily inherit Nilhan Financial's insider status. See In re Village at Lakeridge, LLC, 814 F.3d 993, 1000 (9th Cir. 2016) (holding that "a person's insider status is a question of fact that must be determined after the claim transfer occurs."). But it also distinguished Nilhan Financial on the grounds that it held an allowed, pre-petition claim that arose through actions taken in

good faith. Even if Norcross and Nilhan Financial are both insiders of Nilhan, the bankruptcy court's different treatment of the two was not an abuse of discretion.

Second, the bankruptcy court determined that Norcross engaged in conduct that gave it an unfair advantage. Without notifying the bankruptcy court, Thakkar, as Norcross's manager, arranged a risky, multi-million-dollar loan to Nilhan to facilitate the repurchase. And though Nilhan's creditors benefited from the eventual sale of Emerson Center by the Trustee, that outcome, the bankruptcy court explained, occurred despite Thakkar's actions as well as because of them. The terms of the Norcross loan placed the property in danger of foreclosure. And it was Nilhan's position at the time that the property was unlikely to benefit its creditors, which is why it requested the property be transferred to Norcross. Without the appointment of the Trustee, the property might have left the estate altogether. Accordingly, the bankruptcy court did not abuse its discretion by ruling that Norcross was not entitled to the same priority treatment as Nilhan's other creditors.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's decision affirming the bankruptcy court's order.

**AFFIRMED**.