**In re Rowland SCOTT, III, Debtor.**

**Bankruptcy No. 96–20774.**

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

March 3, 1997.

Robert H. Baer, Brunswick, GA, for Debtor.

Melinda Bruley White, Gilbert, Harrell, Gilbert, Sumerford & Martin, Brunswick, GA, for Creditors.

Sylvia Ford Brown, Savannah, GA, trustee.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Debtor's Objection to Claim for past due rent. This Chapter 13 case was filed by Rowland Scott, III ("Debtor") on July 17, 1996. Subsequently, a proof of claim for failure to pay rent was filed by Robert L. Melvin and Vickie Melvin ("Creditors"). On September 20, 1996, Creditors filed a Motion for Relief from Stay which was granted by the Court on November 12, 1996. On October 17, 1996, Debtor filed an Objection to the Claim of Creditors contending that their claim for rent accruing post-petition should not be entitled to administrative expense priority. In reply, Creditors filed a Response to the Objection to Claim. On December 11, 1996, a hearing was held on the Objection to Claim. The following findings of fact and conclusions of law are published in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

On May 31, 1994, Debtor and Creditors entered into a contract for the sale of land. On July 27, 1994, the original contract was

amended and accepted by both parties. The amendments, in part, provided the following:

A. The ... contract shall be extended for one year until June 1, 1995 with closing to take place on or before said date. During interim period, Ms. Jackie Scott and Mr. Roland[sic] Scott and family will be leasing said property, with an option to buy, on the following terms:

a. Monthly payment will be $618.00 per month. Due payable the 5th of each month. First payment to begin September 5, 1994. Grace period will be five (5) days, until the 10th, at which time, a 15% penalty will be added to payment.

b. Mr. & Mrs. Scott have posted a $1500.00 binder/deposit. This $1500.00 will be applied to closing if property closes on or before June 1, 1995. This $1500.00 will be considered non-refundable and considered as Liquidated Damages by the seller, if closing does not occur on or before June 1, 1995....

When June 1, 1995 arrived, Debtor was unable to close the sale. From that date until May of 1996, Debtor continued to make monthly rental payments as provided for in the expired contract. Both Debtor and Creditors intended to complete the sale of the property, despite the expiration of the amendment to the contract for sale. On July 11, 1996, Creditors sent a letter to Debtor indicating the amount of the past due rent and urging Debtor to pay the past due amount in order to avoid a 15% late charge as provided in the lease.[1] This Chapter 13 case was filed on July 17, 1996. Creditors sent another letter dated July 25, 1996 stating that if the past due amount was not received by July 29, 1996, they would demand that Debtor vacate the house by July 31, 1996. In addition, the letter stated that a 15% late charge would be added to each payment not made on time. Debtor vacated the premises on September 30, 1996.

At the December 11, 1996 hearing, Creditors presented evidence listing the following debts owed them by Debtor:

Debts accrued prior to filing of petition:

| | |
|---|---|
| $418.00 | Rent for May 1996 |
| $ 92.70 | Late fee for May 1996 rent |
| $618.00 | Rent for June 1996 |
| $ 92.70 | Late fee for June 1996 rent |
| $338.90 | Rent for July 1, 1996—July 17, 1996 |

Debts accrued after filing of petition:

| | |
|---|---|
| $279.10 | Rent for July 18, 1996—July 31, 1996 |
| $ 92.70 | Late fee for July 1996 rent |
| $618.00 | Rent for August 1996 |
| $ 92.70 | Late fee for August 1996 rent |
| $618.00 | Rent for September 1996 |
| $ 92.70 | Late fee for September 1996 rent |
| $200.00 | Replacement fee for curtains sold |
| $500.00 | Attorney fee. Amounts still accruing. |

The amounts of these claims are not disputed by Debtor. However, the Court must now determine how they are to be treated in the context of this Chapter 13 case.

### Conclusions of Law

This is a core matter within the meaning of 28 U.S.C. 157(b)(2)(B). Creditors request that their claim for past due rent accruing post-petition be afforded administrative expense priority. Such status depends on compliance with the requirements of 11 U.S.C. § 503. In relevant part, Section 503 states the following:

(b) After notice and a hearing, there shall be allowed administrative expenses ..., including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.... [2]

The Code does not provide a comprehensive list of those items which qualify as the "actual, necessary costs and expenses of preserving the estate." In fact, the Eleventh Circuit has held that Congress did not intend the list of qualifying claims in 503(b) to be exhaustive. *See Varsity Carpet Servs., Inc. v. Richardson*, 19 F.3d 1371, 1377 (11th Cir. 1994). In *Richardson*, the Court held that in

---

1. It should be noted that the contract had already expired almost a year prior to the sending of this letter. The validity of any such late payment fee is problematic. A course of dealing might have been established between the parties. Nonetheless, as a practical matter, the charges are not disputed by Debtor.

2. Section 503(b) lists five additional types of administrative expense priority which have not been enumerated here because they are inapplicable to the instant case.

order to allow an administrative expense, the debtor must have received a benefit which was actual and necessary to the preservation of the estate. *See id.* at 1383; *In re Bio-Med Laboratories*, 131 B.R. 72, 75 (Bankr. N.D.Ohio 1991).

### Administrative Expenses Under Section 365(g)(2)

The treatment of unexpired leases and executory contracts in bankruptcy is governed by 11 U.S.C. § 365. In the present case, there was no unexpired written lease. There was a lease that expired a year prior to the filing of the petition. What remains to be determined is whether the rental agreement in the post-lease period is best described as a tenancy at will[3] or a tenancy at sufferance[4] and, further, whether the rental agreement is one subject to the provisions of Section 365.

■ In Georgia, a tenant at will has the consent of the landlord to occupy the premises, "whereas a tenant by sufferance is a wrong-doer who is in possession without the landlord's consent, although his original entry may have been lawful." George A. Pindar & Georgine S. Pindar, *Georgia Real Estate Law and Procedure* § 11–38 (1993) (citing *Thrift v. Schurr*, 52 Ga.App. 314, 183 S.E. 195 (1935)). The Georgia Court of Appeals recently explained the distinction by stating:

> A [tenant] at sufferance is ... one [who] comes into possession of land by lawful title, but keeps it afterwards without any title at all.... A tenant at will is always in by right, evidenced by permission, express or implied, of the landlord.

*Diner One, Inc. v. Bank South, N.A.*, 219 Ga.App. 702, 703, 466 S.E.2d 234, 236 (1995) (quoting *Willis v. Harrell*, 118 Ga. 906, 909, 45 S.E. 794 (1903)).

■ When a tenant holds over after a lease has been terminated by the landlord, he becomes a tenant at sufferance. *Solon Automated Servs., Inc. v. Corporation of Mercer University*, 221 Ga.App. 856, 860, 473 S.E.2d 544, 547 (1996). In other words, it is a

prerequisite to the creation of a tenancy at sufferance that the lease be terminated. Many leases contain notice requirements for termination, even where they have expired. George A. Pindar & Georgine S. Pindar, *Georgia Real Estate Law and Procedure* § 11–31 (1993). However, where there is no such provision, the lease is terminated automatically upon its expiration date. *Johnson v. Standard Oil Co.*, 125 Ga.App. 486, 188 S.E.2d 174 (1972).

■ In the present case, the lease did not contain a notice provision. Therefore, when the lease expired, it terminated automatically, and a tenancy at sufferance was created.

■ Even though a lease has been terminated and a tenancy at sufferance created, where the landlord has given the tenant permission, expressly or impliedly, to remain in possession, the landlord is estopped from treating the tenant as one at sufferance. *Solon Automated Servs.*, 221 Ga.App. at 860, 473 S.E.2d at 547. The Georgia Court of Appeals explained:

> It takes very little to convert a tenancy at sufferance into a tenancy at will. Receipt of rent, demand for rent, or anything that indicates the permission of the landlord to the tenant to remain in possession will have this effect.

*Diner One*, 219 Ga.App. at 704, 466 S.E.2d at 236 (quoting *Willis v. Harrell*, 118 Ga. 906, 909, 45 S.E. 794 (1903)).

■ In the present case, the lease expired and was terminated automatically by its terms on June 1, 1995. Thus, at that time, a tenancy at sufferance existed. However, Creditors continued to accept rent after the lease expired. Such acceptance of rent is construed as an implied consent by Creditors for Debtor to remain in possession of the premises. Thus, the tenancy at sufferance had been converted into a tenancy at will. In May of 1996, when Debtor stopped making rent payments, Creditors took no action indicating that their consent to Debtor's possession of the premises had been revoked.

---

3. In Georgia, "[w]here no time is specified for the termination of a tenancy, the law construes it to be a tenancy at will." O.C.G.A. § 44-7-6.

4. The Official Code of Georgia does not define a tenancy at sufferance.

In fact, to the contrary, Creditors sent letters demanding that the rent be paid. Such demand for rent only served to impliedly reinforce Creditors' permission for Debtor to remain in possession. Accordingly, the Court holds that at the time the petition was filed, a tenancy at will existed.

■ In 1984, the Bankruptcy Code was amended to include Section 365(m). This section states that "[f]or purposes of this section . . . leases of real property shall include any rental agreement to use real property." 11 U.S.C. § 365(m). With this addition to the Bankruptcy Code, Congress indicated an intention to construe the term "lease" broadly to include even oral or month-to-month rental agreements. *See In re United West, Inc.,* 87 B.R. 138, 140 (Bankr.D.Nev.1988); *In re Challa,* 186 B.R. 750, 757 (Bankr.M.D.Fla.1995) (verbal lease agreement). In the present case, while no valid written lease existed at the time the petition was filed, a rental agreement in the form of a tenancy at will existed between the parties. This agreement falls within the prescribed definition of lease, so as to make Section 365 applicable.

Under Section 365(a), "the trustee,[5] subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." If an unexpired lease is rejected and there has been no prior assumption, a breach of the lease is deemed to have occurred immediately before the date of the filing of the petition. 11 U.S.C. § 365(g)(1). If, on the other hand, an unexpired lease is first assumed and later rejected, such a rejection is construed as a breach of the lease which occurred at the time of rejection (i.e. post-petition).[6] 11 U.S.C. § 365(g)(2)(A).[7] This distinction of whether the breach is

deemed to have occurred pre-petition or post-petition is significant because courts have typically allowed administrative expense priority for those claims resulting from post-petition breach such as where an unexpired lease was first assumed and later rejected. *See, e.g., GATX Leasing Corp. v. Airlift Int'l,* 761 F.2d 1503, 1509 n. 5 (11th Cir.1985) (citing 11 U.S.C. § 365(g)(2)).

In the present case, there was no express assumption of the rental agreement. However, Debtor did indicate an intention to assume the lease by electing to "accept" it in his initial bankruptcy plan. Thus, the Court must determine whether "accepting" an unexpired lease in an unconfirmed Chapter 13 plan constitutes an assumption of the lease.

■ Assumption of an unexpired lease can only be accomplished through express order of the court. 11 U.S.C. § 365(a) (The trustee's power to assume an unexpired lease is "subject to the court's approval."). Here, even though the initial plan indicated that Debtor planned on assuming the obligations under the tenancy at will, the Court has not approved such assumption by confirmation of the plan or otherwise. Therefore, no assumption has occurred.

Since there has been no assumption, Creditors cannot justify administrative expense status for their post-petition rent claim by reference to case law allowing such status where an unexpired lease was first assumed and later rejected. Nonetheless, Creditors contend that they should be allowed an administrative expense claim because they relied on Debtor's indication that he would assume the obligations under the tenancy at will. In fact, Creditors' own conduct points to the opposite conclusion.

---

5. Although this code section uses the word "trustee," the right to assume or reject an executory contract or unexpired lease can also be exercised by a debtor-in-possession in a reorganization case. *Local Unions v. Brada Miller Freight System, Inc.,* 702 F.2d 890, 891 n. 3 (11th Cir.1983).

6. The rules are different if there has been a conversion in the bankruptcy case. *See* 11 U.S.C. § 365(g)(2)(B). Since there has been no conversion here, discussion of those rules is unnecessary.

7. Section 365(g)(2) states that the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease:

(g) (2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title—

(A) if before such rejection the case has not been converted under section 1112, 1208, or 1307 of this title, at the time of such rejection. . . .

In the post-petition period, Creditors wrote a letter demanding that Debtor vacate the premises if payment was not received by a certain date, sought and achieved relief from the automatic stay, and took actions which ultimately led to the Debtor vacating the property on September 30, 1996. In addition, according to Creditors' own pleadings, "Despite representations at the Meeting of Creditors on August 19, 1996 that he would immediately vacate the premises, Debtor made no attempt to bring the rental payments current and continued to occupy the premises...." (Motion to Allow Priority at 1.)

While Debtor's initial plan may have indicated an intention to "accept" the tenancy at will, neither parties' conduct supports a finding that Creditors relied upon such indication to assume. Thus, it is unnecessary for the Court to determine whether such reliance would result in allowance of administrative expense priority.

### Other Justifications for Administrative Rent

█ In general, the question of whether administrative expenses are to be paid is within the discretion of the trial court. *In re Verco Indus.*, 20 B.R. 664 (9th Cir.BAP 1982). The Eleventh Circuit recognized a court's ability to treat claims, other than those enumerated in Section 503(b)(1)(A), as administrative expenses as long as they are reasonably demonstrated to be "actual, necessary" costs of the estate. *See Richardson*, 19 F.3d at 1377.[8] As stated earlier, in order to meet this test, a benefit which is necessary to the preservation of the bankruptcy estate must be received by the debtor. *Richardson*, 19 F.3d at 1383. This leaves the question of whether the post-petition rent in the present case meets this threshold requirement.

Courts are called upon to decide whether administrative expense priority is appropriate for several typical types of claims where there is no assumption of a rental agreement. These claims include, (1) a claim for the rent which accrued between the filing of the petition and the time when the rental agreement is ultimately rejected (typically for a nonresidential lease),[9] (2) a claim for rent which was necessary for the preservation of a debtor's

---

**8.** The Eleventh Circuit reasoned that "the use of the word 'including' [in Section 503(b)(1)(A)] is not intended to be limiting." *Richardson*, 19 F.3d at 1377. The court explained further:

> The leading bankruptcy treatise supports this interpretation of section 503(b)'s categories as illustrative rather than exhaustive:
>
> > While it is true that the court is not free to fashion additional priorities it ought not be assumed that the six designations are necessarily exclusive nor designed to cover every conceivable situation.... The court might well conclude there are to be allowed as administrative expenses claims not necessarily precisely covered by the provisions of section 503(b).

*Id.* at 1377 n. 6 (quoting *Collier on Bankruptcy* ¶ 503.03 at 503–17 (the language is currently found in ¶ 503.03 at 503–21 to 503–22)).

**9.** A claim for administrative rent in this situation is often successful if based upon Section 365(d)(3) which reads as follows:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title....

Where the trustee has failed to fulfill this obligation, courts have interpreted this provision as allowing an administrative expense priority claim for such "decision period" rent for unexpired *nonresidential* leases. *See, e.g., Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.)*, 27 F.3d 401, 405 (9th Cir.1994) (emphasis added). This method of obtaining administrative expense priority for post-petition rent is not applicable in the present case since the rental agreement in question was for *residential* property. Courts have split over the issue of whether or not the requirement of Section 503(b)(1)(A) that the expense be actual and necessary needs to be satisfied in this type of case. A majority of courts has held that the mere existence of an unexpired lease is enough; a minority of courts has held that administrative expense priority cannot be established without first fulfilling the requirements of Section 503. *Fifth Avenue Jewelers, Inc. v. Great East Mall, Inc.*, 203 B.R. 372 (Bankr.W.D.Pa.1996) (discussing the split in authority); *compare Towers*, 27 F.3d at 404–05 (majority stance), *with Broadcast Corporation of Georgia v. Herbert C. Broadfoot, II (In re Subscription Television of Greater Atlanta)*, 789 F.2d 1530, 1532 (11th Cir.1986) (minority stance).

movable property,[10] and (3) a claim where a rental expense is necessary to continue business operations.[11] These three types of claims provide little guidance in the present case. The first type of claim is distinguishable because it only applies to nonresidential leases (the lease in question here is residential). The second type of claim is most appropriate in a Chapter 7 case where the rental expense is an actual cost necessary to preserve assets of the bankruptcy estate until they are sold or abandoned. *See, e.g., Dock's Corner Assocs. v. James W. Boyd (Matter of Great Northern Forest Prods., Inc.)*, 135 B.R. 46, 60 (Bankr.W.D.Mich.1991). Finally, the third type of claim makes the most sense in a Chapter 11 case, where the rental expense is necessary cost for a successful reorganization (e.g., warehouse space rental for inventory).

There is an apparent scarcity of case law discussing administrative expense priority for post-petition rent of residential premises in a Chapter 13 case (other than where an unexpired lease was first assumed and later rejected). This lack of authority is not surprising. In a Chapter 13 case, the amount of unpaid post-petition rent is typically so small that the parties either reach a compromise or abandon the claim, thereby avoiding litigation over the issue.

■ Although the Bankruptcy Code does not expressly prevent allowance of a claim for post-petition rent of residential property in a Chapter 13 case as an administrative expense, it is difficult to envision a situation where such a rental expense would qualify as an actual and necessary cost of preserving the bankruptcy estate as required by Section 503(b)(1)(A) While the Court's observation is not meant to suggest that a creditor could never make a persuasive argument in a Chapter 13 case, no such showing has been made in this case.[12]

### Breakdown of Rent Claims

■ A tenancy at will is a continuing agreement with no expiration date where typically only the statutorily prescribed notice [13] or a failure of the tenant to pay rent followed by an eviction proceeding can terminate the legal relationship. George A. Pindar & Georgine S. Pindar, *Georgia Real Estate Law and Procedure* § 11–40 (1993). Yet, for purposes of categorizing claims in the context of a bankruptcy case, it becomes necessary to define the term more precisely.

In Georgia, tenancies at will are often understood as a month to month arrangement between landlord and tenant. *Id.* § 11–42.[14] While there is no statutory authority explaining this concept, in practice, it follows that scheme. In other words, there is normally a time by which the tenant pays the rent for the upcoming month. Since the Georgia Code does not prescribe a specific date for the payment of rent under a tenancy at will, the due date for rent is established between the parties either by oral agreement or course of dealing. The monthly payment of rent by the tenant entitles the tenant to occupy the premises for that month. Each month the rent is paid, the right to enjoy the use of the premises is renewed.

■ In the present case, a tenancy at will was created on June 1, 1995, the expiration

---

**10.** *See Collier on Bankruptcy,* ¶ 503.04 at 503–35.

**11.** *Id.*

**12.** Terms of the Bankruptcy Code must have utility from one chapter to another. Yet, the nature of debtors as between the chapters varies. A corporate debtor may exist for the purpose of profiting from its activities. Any "necessity" as to such a debtor can be defined within the narrow terms of cost-benefit analysis. Such analysis is less useful in considering "necessity" for an individual debtor. For example, transportation may be immediately related to the production of earnings which are used to fund a reorganization plan. Housing may be less directly related to the economic enterprise unless it can be said that a debtor's day to day existence is itself an economic enterprise maintained for the benefit of creditors. So it happens that a term such as "actual and necessary" may lose its practical utility in Chapter 13 even though it is technically applicable.

**13.** "Sixty days' notice from the landlord or 30 days' notice from the tenant is necessary to terminate a tenancy at will." O.C.G.A. § 44–7–7.

**14.** The treatise explains that a tenancy from month to month and a tenancy at will are essentially synonymous since the latter requires least 30 days notice for termination.

date of the lease. From that time until the time when Debtor started missing rent payments, Debtor made the monthly payment by the fifth day of each month.[15] This course of dealing mirrored the procedure prescribed in the expired lease. For purposes of this bankruptcy case, the Court will view the tenancy at will as a continuing legal relationship between Debtor and Creditors under which the untimely payment by Debtor would result in a breach of the contract for the one month period beginning on the first day of the month of the default. Accordingly, where a petition is filed in the middle of a particular month, the Court will not prorate the rent due for that month. The entire amount of the monthly rent is a pre-petition debt.

Debtor's failure to pay rent began in May of 1996. In fact, Debtor made no payments for any of the months of occupancy which followed, including those months which fell post-petition. Debtor filed this bankruptcy case on July 17, 1996, causing the petition to fall within the one month period of the tenancy at will for which the payment of rent was due on July 5, 1996. Accordingly, the claim for breach of the obligation to pay the rent due for July of 1996 arose pre-petition, and the entire amount of rent due for that month is a pre-petition debt.

As previously mentioned, when an unexpired lease is rejected, such rejection constitutes a breach of the lease immediately before the date of the filing of the petition. 11 U.S.C. § 365(g)(1). Here, Debtor effectively rejected any right to occupy the subject property under the tenancy at will by vacating the premises on September 30, 1996. For purposes of this bankruptcy case, this rejection constitutes a breach of the rental agreement immediately before July 17, 1996, the date the petition was filed. The appropriate damages resulting from such breach are also part of Creditors' pre-petition claim.

In Georgia, in order for a tenant to terminate a tenancy at will, he is required to give the landlord 30 days notice of his intent to vacate the property. O.C.G.A. § 44–7–7. If a tenant does not give the prescribed notice, then he is responsible for a breach of the terms of the tenancy at will. In addition to any unpaid rent at the time of such breach, the landlord's damages would include the rent due for the thirty days following the breach date. In the present case, by virtue of Section 365(g)(1), the rejection of the tenancy at will constitutes a breach immediately before the petition filing on July 17, 1996. Thus, Creditors' pre-petition claim would include the rent due the thirty days following July 17, 1996. The Court has already accounted for the portion of the "thirty days" claim which accrued in the remaining days of July by allowing the rent for the entire month of July as a pre-petition claim. However, the rent due from August 1, 1996 to August 17, 1996 must be also be added to Creditors' pre-petition claim. The prorated rent for this partial month totals $338.90.[16] The remaining $279.10 of August rent is a post-petition debt.

As a result, the unpaid rent for May, June, July, and the first seventeen days of August are pre-petition debts, and the unpaid rents for the remaining days of August and all of September are post-petition debts.

*Miscellaneous Matters*

Creditors have included late fees as part of their claim. The expired lease provided for a 15% penalty if a rent payment was more than five days late. Debtor has not disputed the validity of such a penalty, even in the post-lease period. Accordingly, the Court will allow Creditors to include the applicable late fees in their claim.

Creditors also list a replacement fee of $200.00 for curtains allegedly belonging to Creditors and sold by Debtor. There has been no evidence tendered to the Court regarding this matter. Therefore, this $200.00

---

**15.** The Court assumes this to be true because no evidence to the contrary has been presented.

**16.** This total was calculated by dividing the $618.00 monthly rent by thirty-one days (the number of days in August) and multiplying that quotient by the seventeen days for which rent is to be prorated.

replacement fee will not be allowed as part of Creditors' claim.

Finally, Creditors contend that they are entitled to attorneys' fees of $500.00 plus amounts still accruing. The Court finds no legal basis for awarding these attorneys' fees.

### Conclusion

Administrative expense priority will not be allowed for any portion of Creditors' rent claim. Instead, the Court will allow, as a general unsecured pre-petition claim, the past due rent for the months of May, June, July, and the first seventeen days of August. The rent accruing in the remaining days of August and all of September are post-petition debts. Specifically, the Court will allow $2,321.84 [17] as an unsecured pre-petition claim, while $1,031.66 [18] will be considered a post-petition claim.[19]

17. This total was calculated by adding the rent remaining due for May of 1996 ($418.00), the rent due for all of June and July ($1,236.00), the rent for the first seventeen days of August ($338.90) and the applicable late fees ($328.94— the late fees for May, June and July, plus a prorated late fee for the first seventeen days of August).

18. This total was calculated by adding the post-petition rent accruing from August 18 to August 31 ($279.10), the rent for all of September ($618.00), and the applicable late fees ($134.56— the late fee for September plus a prorated late fee for the last fourteen days of August).

19. This opinion in no way precludes Creditors from seeking treatment of the post-petition claim through the plan under the guidelines of Sections 1322(b)(6) and 1305 or asserting its right to repayment outside bankruptcy along with other post-petition debtors.