Austin E. Carter, United States Bankruptcy Judge
Before the Court is Microf, LLC's Motion for Allowance and Payment of Administrative Claim (Doc. 39), and the Debtor's opposition thereto (Doc. 40), which came on for hearing on August 8, 2018. Attending the hearing were counsel for Microf, LLC ("Microf"), counsel for the Debtor Paul L. Cumbess (the "Debtor"), and Camille Hope, the Chapter 13 trustee (the "Trustee"). After the hearing, the parties were given time to submit post-hearing briefs. Microf and the Trustee did so.
A proceeding to determine allowance of an administrative expense is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Having considered the parties' pleadings and arguments, the remainder of the record, and applicable legal authority, the Court states its findings of fact and conclusions of law in accordance *845 with Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7052, which is made applicable through Bankruptcy Rule 9014(c).
I. Findings of Fact
No witnesses testified at the hearing, but the following facts are undisputed. In 2015, prior to filing of this case, the Debtor entered into a rental lease agreement (the "Lease") with Microf for HVAC equipment for his residence.[1]
The Debtor filed his bankruptcy petition in August 2017 and his plan was confirmed a short while later (See Doc. 21). The confirmed plan provides for the Debtor's assumption of the Lease and states that the Debtor will be the disbursing agent to Microf (Doc. 21, ¶ 2(m), (l) ). The confirmed plan also provides for the curing of pre-petition arrearage due to Microf, to be disbursed by the Trustee (Doc. 21, ¶ 2(m) ).
As to estate property, the confirmed plan provides that:
Unless otherwise ordered by the court, all property of the estate, whether in the possession of the trustee or the debtor, remains property of the estate subject to the court's jurisdiction, notwithstanding § 1327(b), except as otherwise provided in paragraph (m) above. Property of the estate not paid to the trustee shall remain in the possession of the debtor.
(Doc. 21, ¶ 2(p) ).
Several months after plan confirmation, the Debtor defaulted on payments due under the Lease. As of July 6, 2018, the Debtor owes $1,763.95 in arrearages on the Lease.
At the hearing, the Debtor's attorney acknowledged that the Debtor has possession of the HVAC equipment, and that the Debtor "is benefiting from its use." No evidence or other information about the Debtor's use of the HVAC equipment or any other heating or cooling equipment was offered.
The question before the Court is whether the amounts due for post-confirmation missed Lease payments qualify as administrative expenses under § 503(b)(1)(A).[2]
II. Conclusions of Law
A. Summary
Microf asserts that the bankruptcy code and applicable case law provide that a debtor's post-confirmation default under a lease assumed in a chapter 13 plan gives rise to the lessor's administrative expense claim for damages. Microf seeks the allowance of an administrative expense for its claim and, if necessary, an order requiring a modified plan to provide for the payment of that claim.
The Trustee opposes this motion, arguing primarily that (1) the Debtor's use of the leased HVAC equipment does not meet the "actual, necessary costs and expenses of preserving the estate" standard of § 503(b)(1)(A), and (2) even if the Lease payments were actual and necessary to preserve the estate, Microf's claim is already classified in the plan and cannot now-post-confirmation-be reclassified as an administrative expense, as such reclassification would unfairly grant priority to *846 Microf's claim ahead of other creditors' claims. The Trustee also recites several policy and practical concerns that she suggests should weigh against Microf's Motion.
The Debtor takes no position as to whether the missed Lease payments qualify as administrative expenses, but expresses concern about the mechanics, method, and payment schedule of both the current arrears and any future arrears. The Debtor opposes any order requiring plan modification.
After due consideration, the Court holds that Microf has not met its burden with respect to its Motion. Contrary to Microf's assertion, the Court finds that an administrative expense claim does not arise automatically from the default under a lease assumed by a debtor in a chapter 13 plan. Therefore, to establish an administrative expense claim, Microf must demonstrate that the subject of the assumed lease-here, the HVAC equipment-was an actual and necessary expense for the preservation of the estate. Microf has failed to do so.
B. Standard and Burden of Proof
Section 503 establishes the standard for allowance of administrative expenses. Under § 503(b)(1)(A), a party may move for allowance of administrative expenses for the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). In assessing whether an expense falls within § 503(b)(1)(A), the Court must consider whether there has been "an actual, concrete benefit to the estate." Broadcast Corp. of Ga. v. Broadfoot (In re Subscription Television of Greater Atlanta) , 789 F.2d 1530, 1532 (11th Cir. 1986). A potential benefit is not sufficient. Id. The standard for allowance of an administrative claim should be narrowly construed. Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus., Inc.) , 19 F.3d 1371, 1377 (11th Cir. 1994) ("[S]ection 503 priorities should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors." (citing Otte v. U.S. , 419 U.S. 43, 53, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974) ) ); Matter of Concrete Prod., Inc. , 208 B.R. 1000, 1006 (Bankr. S.D. Ga. 1996) ("The claim of priority should be founded on a strict statutory basis; if the claim does not derive from the language of Section 503, it must fail.").
The claimant bears the burden of proving both that the expense was actual and necessary, as well as the value provided. In re Bridgeport Plumbing Prod., Inc. , 178 B.R. 563, 569 (Bankr. M.D. Ga. 1994) (Laney, J.) ("The burden of proving entitlement to an administrative expense claim was on [the claimant], to prove not only that the expense was 'actual' and 'necessary,' but also the reasonable value of the expense.").
C. Analysis
a. Presumed Benefit to Estate
Administrative claims are governed by § 503(b)(1)(A). This section provides, in relevant part, that allowed administrative expenses shall include "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).
Microf argues that an assumed lease is presumptively beneficial the estate. In support of this assertion, Microf cites two well-known bankruptcy treatises, W. Homer Drake, Jr., Paul W. Bonapfel & Adam M. Goodman, Chapter 13 Practice and Procedure , § 6:10 (2018) and Collier on Bankruptcy ¶ 503.06[6][b] (Richard Levin & Henry J. Sommer eds., 16th ed. 2018).
Chapter 13 Practice and Procedure indeed recognizes the "general principle ... that assumption itself creates the administrative *847 expense obligation such that the nondebtor party need not show benefit to the estate as a result of the assumption," but the treaties also notes, and Microf concedes, that "adherence to this rule is not universal." Chapter 13 Practice and Procedure § 6:10. Two cases are cited for its stated general principle. Id. , § 6.10 n.5 (citing In re Michalek , 393 B.R. 642 (Bankr. E.D. Wis. 2008) and In re Wells , 378 B.R. 557 (Bankr. S.D. Ohio 2007) ). The Court does not consider In re Michalek to support the general principle for which it is cited. To the contrary, in that case, the court held that an administrative claim does not automatically arise from a post-petition breach of a lease assumed under a chapter 13 plan. In re Michalek , 393 B.R. 642, 644, 646 ("I do not find support in the code for the proposition that a post-assumption breach automatically obligates the estate, or the plan, for damages from that breach.... I do not believe the code supports automatic treatment of the lessor's claim as an administrative expense claim.... So to obligate the estate, there must be benefit to the estate as required by section 503(b)(1)(A)").[3]
The second case cited in Chapter 13 Practice and Procedure , In re Wells , does support the principle that an administrative claim should result automatically upon a default under an assumed lease. However, that case has been distinguished and criticized by more recent holdings. For its holding, the Wells court relied primarily upon an unpublished Sixth Circuit decision involving a chapter 11 debtor. See In re Wells , 378 B.R. at 560 (citing In re Revco D.S., Inc. , No. 93-3597, 1994 WL 376884 (6th Cir. July 18, 1994) ). A later Sixth Circuit case criticizes Wells based on the distinctions between a chapter 11 debtor-in-possession and a chapter 13 debtor. Ford Motor Credit Co. v. Bankr. Estate of Parmenter (In re Parmenter) , 527 F.3d 606, 610 (6th Cir. 2008) ("[T]here is a material difference between the two settings: Whereas a Chapter 11 debtor-in-possession acts on behalf of the estate, a Chapter 13 debtor who assumes and pays for a lease outside of the plan does not." (citations omitted) ). Other opinions similarly attach significance to the difference between chapter 11 and chapter 13 cases. See, e.g., In re Rosenhouse , 453 B.R. 50, 56 (Bankr. E.D.N.Y. 2011) ("Unlike in a chapter 11 case, the Bankruptcy Code and Rules do not establish any requirement that the court approve a chapter 13 debtor's assumption of a personal property lease as being in the best interests of creditors or the bankruptcy estate, or even as a proper exercise by the debtor of his or her business judgment"); In re Juvennelliano , 464 B.R. 651, 653-54 (Bankr. D. Del. 2011) (discussing difference between chapters). The Court considers the differences between Chapter 13 and Chapter 11 significant in the context of Microf's request for an administrative expense.
As for Collier , the section to which Microf cites does include the general statement that "any damages for breach of [an assumed] contract or lease will be entitled to administrative expense priority." Collier on Bankruptcy ¶ 503.06[6][b]. However, each of the three cases cited for this statement are chapter 11 cases that pre-date the 2005 enactment of § 365(p)(1).Id. at ¶ 503.06[6][b] n.86 (citing In re Frontier Props., Inc. , 979 F.2d 1358 (9th Cir. 1992) ; In re Norwegian Health Spa, Inc. , 79 B.R. 507 (Bankr. N.D. Ga. 1987) ; and Samore v. Boswell (In re Multech Corp.) , 47 B.R. 747 (Bankr. N.D. Iowa 1985) ). As explained *848 below, the Court does not consider pre-2005 Chapter 11 cases helpful on the issue before the Court, due to the provisions of § 365(p)(1), enacted in 2005.[4]
With respect to the presumed benefit to the estate from an assumed lease, the Court is persuaded by a case to which no party cites. In re Ruiz , No. 09-38795-BKC-LMI, 2012 WL 5305741 (Bankr. S.D. Fla. Feb. 15, 2012). The facts of In re Ruiz are analogous to ours-a lessor sought an administrative expense claim for post-confirmation default under a lease assumed by the debtor in a chapter 13 plan. Id. at *2. The plan provided that the debtor rather than the trustee would make the lease payments. Id. at *4. Upon default, the lessor filed a motion seeking allowance of an administrative expense. Id. at *4. The court denied the lessor's motion. Id. at *11.
It its analysis, the court weighed the historical presumption of benefit to the estate by the assumption of a lease, against requiring a lease claimant to demonstrate an "actual, concrete benefit to the estate." Id. at *2. The court took issue with the historical practice of presuming benefit because the 2005 enactment of § 365(p) (as part of BAPCPA) gave rise to a meaningful distinction between the assumption of a lease by a debtor and the assumption of a lease by a Chapter 13 trustee. Id. at *3. The court focused on the interplay between §§ 365(d)(2), (p)(1), and 1322(b)(7) and concluded that when the debtor assumed the lease at plan confirmation under § 1322(b)(7), the lease was no longer property of the estate by operation of § 365(p)(1).[5] Id. at *1-2. The court reasoned that because § 365(p)(1) had removed the leased property from the estate, the lessor must show "actual, concrete benefit to the estate" to prevail on its request for administrative claim. Id. The court concluded that the debtor, rather than the estate, was responsible for the default amounts owing under the lease. Id. at *2.
The logic of Ruiz applies to this case, as to this issue. Under § 365(d)(2), the Trustee could have assumed the Lease at any time before plan confirmation. Because the Trustee did not do so, however, § 365(p)(1) took effect, removing the HVAC equipment from the estate and terminating the automatic stay with respect thereto.[6] Accordingly, *849 when the Debtor's plan was confirmed and the Lease assumed under § 1322(b)(7), the HVAC equipment had already ceased to be property of the estate and was no longer protected by the automatic stay.[7] The Court agrees with Ruiz, that the relevant code sections should preclude the finding of any presumed or automatic benefit to the estate by virtue of the Lease assumption. See also In re Michalek , 393 B.R. 642, 646 (Bankr. E.D. Wis. 2008) ("I do not believe the code supports automatic treatment of the lessor's claim as an administrative expense claim.") (emphasis in original).[8]
The analysis in Ruiz also undercuts three cases cited by Microf: In re Wright , 256 B.R. 858 (Bankr. W.D.N.C. 2001) ; In re Masek , 301 B.R. 336, 338 (Bankr. D. Neb. 2003) ; and In re Smith , 315 B.R. 77 (Bankr. W.D. Ark. 2004). Both Wright and Masek rely on In re Pearson , 90 B.R. 638 (Bankr. D. N.J. 1988), for their respective findings that the assumption of the lease creates the resulting administrative expense status. In re Pearson was decided in 1988, long before the 2005 enactment of § 365(p)(1). The Court agrees with the Ruiz court's observation that the enactment of § 365(p)(1) would preclude the Pearson court's conclusion today. Ruiz , 2012 WL 5305741, at *3 (holding that Pearson court's reliance on chapter 11 cases would not be appropriate after enactment of BAPCPA and § 365(p)(1) ).
Smith , on the other hand, is not expressly based on Pearson , but it can still be distinguished by the Ruiz rationale, because it pre-dates the 2005 enactment of § 362(p). 315 B.R. 77.
b. Actual and Necessary for Preservation of the Estate
In evaluating whether an expense meets the "actual and necessary" standard of § 503(b)(1)(A), "the inquiry focuses on whether the estate received 'actual benefit,' not whether the creditor experienced a loss due to debtor's possession of its property." In re Williamson , No. 96-41777, 1997 WL 33474939, at *3 (Bankr. S.D. Ga. June 27, 1997).
Microf argues that the "Debtor's use and possession of the HVAC equipment ... has benefited creditors by substantially increasing the habitability of his dwelling, and therefore aiding Debtor's performance of his plan." (Doc. 39, ¶ 5). In support of this argument, Microf cites to In re Espinosa . 542 B.R. 403, 412 (Bankr. S.D. Tex. 2015). In Espinosa , the court considered, among other things, whether a debtor's rent-free use of a residence benefited *850 the estate such as to satisfy § 503(b)(1)(A). The court held that a benefit to the estate must be shown to qualify for an administrative expense priority, regardless of whether the property was subject to a lease, but found it "self-evident" that a debtor needs a home in which to live while prosecuting his bankruptcy case. Id. at 411.
The Trustee, on the other hand, argues that, to qualify as an administrative expense under § 503(b)(1), an expense must generate income and otherwise actually preserve the estate. She characterizes the HVAC equipment as a consumer good which, while perhaps useful to the Debtor's residence, does not generate income which helps with plan payments; therefore, the Trustee argues, the defaulted lease payments cannot qualify as an administrative expense.
The Trustee cites two cases in support of her argument, but only In re Scott is applicable.[9] 209 B.R. 777 (Bankr. S.D. Ga. 1997). There, the court applied Eleventh Circuit precedent to determine the standard for allowance of administrative expenses, explaining that the "debtor must have received a benefit which was actual and necessary to the preservation of the estate." Id. at 779-80, 782 (citing Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus.) , 19 F.3d 1371, 1377 (11th Cir. 1994) ). The court then dissects Code and case law and distinguishes between residential housing leases and commercial leases, opining that it is unlikely that a residential housing lease could be shown as an actual and necessary cost of preserving the estate under § 503(b)(1)(A). Id. at 783.[10]
As noted previously, Eleventh Circuit precedent requires a bankruptcy court to narrowly construe a claim for administrative expenses. In re Colortex Indus. , 19 F.3d at 1377. Applying this standard, the Court finds that Microf has failed to meet its burden of proof to demonstrate that the Lease payments were an actual, necessary cost and expense of preserving the estate.
Microf offered no evidence of benefit to the estate, but instead requests that the Court recognize an inherent benefit of the HVAC equipment, due to its "substantially increasing the habitability" of the Debtor's residence. However, the only case to which Microf cites in support of this request, In re Espinosa , is distinguishable. 542 B.R. 403, 412. Aside from the fact that the position of the Espinosa is not unanimous[11] (or binding on this Court), that *851 case involved a debtor's residence, which is arguably easier to recognize as generating a "self-evident" benefit to the preservation of the estate than is HVAC equipment. HVAC equipment is surely common, and perhaps ubiquitous, but it does not rise to the same level of a necessity in the context of a chapter 13 debtor and estate as does a residence.
Moreover, unlike in this case, in Espinosa the court determined that, without the residence provided by the creditor, the debtors would have had to pay for housing elsewhere-thus, the money saved on rents and costs borne by the creditor benefited the bankruptcy estate. 542 B.R. at 411 ("Debtors were spared the need to move, representing an expense saved, and the need to spend money on an apartment rental or home purchase. In consequence, more money was available to satisfy Debtors' creditors in the chapter 13 plan"). Here, however, no evidence was offered to show that the Debtor would have had to seek alternate means of heating or cooling, and if so at what expense.
Although the Court recognizes that the majority of residences in our area and indeed country have HVAC systems and further recognizes the general concession at the hearing that the Debtor is benefitting from the HVAC system, the Court cannot inherently recognize without evidence that the Debtor's use of the HVAC equipment-which is not property of the bankruptcy estate under § 365(p)(1) ---provided an actual, concrete benefit to the preservation of the estate. Many factual possibilities have not been addressed and the Court cannot summarily assume unanswered questions fall in favor of Microf.[12]
Because the Court has found that Microf failed to meet its burden to show its entitlement to an administrative claim for the post-confirmation missed Lease payments, the Court need not address (in dicta) the other arguments raised by the Trustee against the requested administrative expense.
Accordingly, for these reasons, IT IS HEREBY ORDERED that Microf's Motion for Allowance and Payment of Administrative Claim is DENIED.
SO ORDERED.

In a pleading filed earlier in the case, Microf asserted that the Lease is a "true lease" under Georgia law. (See Objection to Confirmation , Doc. 11). Neither the Trustee nor the Debtor has disputed that assertion.

Unless otherwise indicated, all references herein to "section" or "§" refer to a corresponding section of the Bankruptcy Code, and all references to the "Bankruptcy Code" or the "Code" refer to Title 11 of the United States Code.

The Michalek court cites to In re Wells with disapproval for the automatic creation of estate or plan liability for breach of an assumed lease. Michalek , 393 B.R. at 644 (citing In re Wells , 378 B.R. 557 ).

Another section in Collier, in addressing § 365(g), suggests that it is an open question whether damages from a post-assumption lease or contract breach are entitled to administrative expense priority. Collier on Bankruptcy ¶ 365.10[5]. Although Collier suggests that the "better approach is to recognize that the estate receives a benefit of the assumed contract," that statement seems difficult to reconcile with § 365(p)(1), which, as explained later in this Order, results in the HVAC equipment's exclusion from the bankruptcy estate at the time the Lease was assumed. This Court sees no reason to presume a benefit to the estate by a debtor's assumption of a lease of property explicitly determined not to be property of the estate.

Section 365(p)(1) provides that "[i]f a lease of personal property is rejected or not timely assumed by the trustee under subsection (d), the leased property is no longer property of the estate and the stay under section 362(a) is automatically terminated." 11 U.S.C. § 365(p)(1).

Despite the broad wording of § 365(p)(1) that arguably provides for the termination of the stay as to all creditors, for a debtor and all property, the more reasonable reading of Congressional intent is that the stay termination under that section is intended to apply to both the leased property and the debtor, but only as to the subject lease. See Collier on Bankruptcy ¶ 365.10 ("Interestingly, the literal language of section 365(p)(1)... appears to effect a total termination of the automatic stay, for all creditors, for all property, for all actions, in any case in which 'a lease [any lease!] of personal property is rejected or not timely assumed by the trustee.' Such a result would be absurd and appear to be demonstrably at odds with clear congressional intent. A more charitable reading suggests that Congress intended only to terminate the stay as to the particular lessor, lease, and leased property that has been rejected."

The provision in the Debtor's plan that property of the estate will remain in the estate after confirmation does not save Microf, because when that provision became effective-at confirmation-the HVAC equipment had already been dropped from the estate under § 365(p)(1), which took effect when the trustee did not assume the HVAC Lease before confirmation per § 365(d)(2). So, the plan provision preserving property of the estate as such did not reach the non-estate-property HVAC equipment.

The logic of Ruiz is consistent with the line of cases holding that an administrative expense claim must "result[ ] from a transaction between the claimant and the trustee of the bankruptcy estate or a debtor in possession ...." See, e.g., In re New WEI, Inc. , No. 15-02741-TOM-7, 2018 WL 1115200, at *3 (Bankr. N.D. Ala. Feb. 26, 2018) (citations omitted). Here, of course, the transaction was between the Debtor and Microf, as the Lease was assumed by the Debtor under § 1322(b)(7) rather than by the Trustee or debtor in possession (which does not exist in this case).

In the other case cited, the Fourth Circuit (in an unpublished decision) mentions an evaluation of whether use of a certain property is in connection with a business operation or other profit generation; however, it does so in the context of a pre-petition secured creditor that is seeking an administrative expense, rather than a counterparty to a lease assumed post-petition. Smith v. Henson (In re Henson) , 57 Fed. Appx. 136 (4th Cir. 2003). The court sets forth the usual rule that pre-petition secured creditors (like the movant in that case) are not eligible for administrative expense claims, but instead must rely on the Code's provisions for adequate protection. Id. at 138. The court then recognizes that a "narrow exception" makes pre-petition secured creditors eligible for administrative expense claim status where post-petition use of their collateral helps generate a profit or operate a business. Id. Because Microf is not a pre-petition secured creditor entitled to adequate protection, the Court does not see any application of Henson to the case before it.

Microf asserts that Scott does not apply here due to that court's ruling in that case that there had been no assumption of the rental agreement at issue. See 209 B.R. at 781. However, the Court assigns little importance to this distinction, because it has held (above) that there is no administrative expense automatically resulting from the assumption of the Lease.

Other courts have refused to find that a Chapter 13 debtor's residence inherently benefits his bankruptcy estate. See, e.g., In re Scott , 209 B.R. 777, 781.

Examples of unaddressed factual possibilities include: How often has the Debtor used the HVAC equipment during the period in question? Has the Debtor had other sources of heating or air conditioning? Has the HVAC equipment been in good working order? Has the Debtor lived at any other residence?